USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/10/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H.C., individually and on behalf of S.C.,

Plaintiff,

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

14 Civ. 1927 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff H.C., on behalf of herself and her son, S.C., brings this case against the New York City Department of Education ("DOE") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. H.C. seeks $48,000 in compensation, which reflects the cost of enrolling S.C. in private school during the 2012-13 academic year. On October 20, 2014, Plaintiff moved for summary judgment and Defendant cross-moved on November 17, 2014. For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

## BACKGROUND: FACTS OF RECORD

S.C., who has been diagnosed with Attention Deficit Hyperactivity Disorder and suffers from a learning disability, has been receiving special education services since he was in kindergarten under the DOE classification of Speech and Language Impairment. S.C. is 14 years old. He is a Staten Island resident who attended P.S. 54, a DOE public school, from kindergarten through fourth grade, each year being promoted to the next grade level despite receiving promotion-in-doubt letters. In fourth grade, S.C. was reading at just a first grade reading level.

S.C.'s parents were unhappy with S.C.'s progress and, during the 2011-12 academic year, they enrolled him in fifth grade at the Cooke Center for Learning and Development ("Cooke Center"), a private provider of special education services for students between the ages of 5 and 21. The DOE funded his placement there pursuant to a settlement agreement with H.C. Tr. 263.

The DOE, wishing to return S.C. to the public school system for the 2012-13 academic year, convened a committee on special education ("CSE") on May 30, 2012, to develop an Individualized Education Program ("IEP") for S.C. The CSE recommended placement in a 12:1:1[1] class in a specialized public school with related services of occupational therapy, physical therapy, speech and language therapy, and counseling. The CSE also recommended a twelve-month learning program. A computerized placement generator, which considers such factors as age, disability classification, functional level, required staffing ratio, classroom space, and proximity to the student's home, selected I.S. 7, a specialized school in District 75 on Staten Island, for S.C.'s placement. By Final Notice of Recommendation dated July 2, 2012, the DOE informed H.C. that S.C.'s recommended school placement was I.S. 7.

H.C. did not enroll S.C. in I.S. 7 for the 2012-13 school year. Although the extent of S.C.'s progress at the Cooke Center is disputed,[2] H.C. was pleased with the Cooke Center and unilaterally decided to enroll S.C. there again for the 2012-13 year.

H.C. visited I.S. 7 on one occasion after the school year had begun. During the visit, a school administrator informed her that the other students in the class were in grades six through eight and were 12 to 14 years old, with math and reading levels ranging from first to

---

[1] The ratio represents twelve students, one teacher, and one teaching assistant.

[2] Plaintiff argues that S.C. made meaningful academic, social and physical progress at the Cooke Center. Specifically, between 2011 and 2013, he progressed from "virtually a non-reader" to reading one syllable words; he made progress in geometry, measurement, number sense, and the operations; and socially "came out of his shell." Pl.'s Br. at 21-22. The DOE argues that evidence of progress was purely anecdotal without any support from objective metrics, such as evaluations of reading level. It notes that even a teacher testified that it was hard to say whether S.C. progressed in reading or writing.

sixth grade. Tr. 227-29. S.C., a sixth grader, was 11 years old at that time with a first grade reading level and second grade math ability. The administrator informed H.C. that the other students in the class were classified as emotionally disturbed. The administrator also informed H.C. that I.S. 7 was not equipped to provide the occupational and physical therapy services related to his IEP on-site, so those services would be provided by independent contractors. Tr. at 231-32.

On January 11, 2013, H.C. filed a due process complaint alleging that the DOE denied S.C. a Free Appropriate Public Education ("FAPE"), and sought direct payment to the Cooke Center of S.C.'s tuition for the 2012-13 school year in the amount of $48,000, which the DOE rejected. A hearing was held before Impartial Hearing Officer ("IHO") Jeffrey Schiro, who found on July 22, 2013 that the flaws alleged in H.C.'s due process complaint did not deny S.C. a FAPE. He did not reach Prongs II and III of the *Burlington/Carter* test. On August 26, 2013, H.C. timely appealed to the State Review Office ("SRO"), which affirmed the IHO in a decision dated November 20, 2013. On March 14, 2014, H.C. filed a complaint in this Court seeking review of the SRO's determination.

## LEGAL STANDARD

Congress enacted the IDEA to promote education for students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). The statute provides that children with disabilities must receive a FAPE at public expense and that the education services must meet the standards of the state education agency and be sufficiently individualized to each student through an IEP. *See* 20 U.S.C. §§ 1400(d)(1)(A), 1401(9).

**A. <u>Procedure Generally</u>**

In New York, a local CSE, consisting of school board representatives, educators, clinicians, and parents, is responsible for formulating a student's IEP. N.Y. Educ. Law § 4402. If a parent is dissatisfied with an IEP, the IDEA allows the parent to challenge the child's placement. 20 U.S.C. § 1415(b)(6)(A). After filing a due process complaint challenging the IEP, the parent is entitled to a hearing before an IHO. In New York, the IHO's decision may be appealed to an SRO in the Department of Education, which independently reviews the IHO's decision. N.Y. Educ. Law § 4404. An SRO's decision is considered final and a party may challenge it in federal court. 20 U.S.C. §1415(i).

IDEA actions in federal court are customarily resolved on summary judgment. *C.L. v. Scarsdale Union Free Sch. Dist.*, 913 F. Supp. 2d 26, 32 (S.D.N.Y. 2012). In this context, summary judgment "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *T.P. ex rel. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (internal quotations omitted). The district court resolves such motions by preponderance of the evidence, but it must give "due weight" to administrative proceedings because "the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy." *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000).

**B. <u>Substantive Requirements</u>**

If a school district fails to provide a student with a FAPE, the district may be required to pay for private educational services obtained for that child. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993). Before a school is required to pay for a program selected by a parent, a three-

prong test, known as the *Burlington/Carter* test, must be satisfied. In Prong I, a court must find that the district's IEP was inadequate or inappropriate. If the due process complaint is substantive rather than procedural, the reviewing court must find that the IEP was not reasonably calculated to confer educational benefit on the student. *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). During the administrative review, the school district has the burden of demonstrating the student was offered a FAPE, but during the district court review, the burden shifts to the parent to prove that the SRO ruled incorrectly. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 225 n.3 (2d Cir. 2012). In Prong II, a parent must show that the private school's program was reasonably calculated to confer an educational benefit to the child. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d Cir. 2006). At a minimum, the program must "provide some element of special education services in which the public school placement was deficient." *Id.* (quoting *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 523 (6th Cir. 2003)). In Prong III, the court must determine whether equitable considerations support the parent's claim, including whether the parents acted unreasonably or failed to cooperate with school officials. *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(III).

A parent need not resolve all these issues before enrolling her child in a private education program. Dissatisfied parents may unilaterally place their child in private school and then seek retroactive reimbursement. 20 U.S.C. § 1412(a)(10)(C). However, parents who place their children "without the consent of state or local school officials [ ] do so at their own financial risk." *Burlington*, 471 U.S. at 374.

**THE INSTANT MOTIONS**

In H.C.'s motion for summary judgment, she argues that the proposed placement at I.S. 7 was substantively inappropriate under Prong I. First, she argues that the I.S. 7

placement did not functionally group S.C. in a way that supported his individual needs because the other students were older than S.C.,[3] had different disability classifications,[4] and most of them were more academically advanced.[5] Second, she argues that District 75 failed to offer a FAPE because some of S.C.'s related services would have been provided by independent contractors. Third, H.C. contends that the teacher could not have adequately implemented S.C.'s IEP, which required direct instruction, immediate teacher responsiveness, graphic organizers and multi-sensory strategies in a structured environment.

As for Prongs II and III, H.C. argues that the Cooke Center was appropriate because S.C. made meaningful progress during his time studying there, and that the equities favor her because H.C.'s family income does not allow her to afford tuition at the Cooke Center.

In response, the Department of Education contends that all of H.C.'s complaints about I.S. 7 are retrospective and impermissibly speculative. Alternatively, it argues that even if I.S. 7 was not perfect, none of H.C.'s substantive complaints constitute denial of a FAPE, and that the Cooke Center was an improper placement because the evidence of S.C.'s progress in his year there is scant.

## DISCUSSION

In this case, Plaintiff's objections to I.S. 7 rather than the IEP itself are impermissibly speculative. Further, even if the Court could consider them, the alleged defects would not constitute denial of a FAPE. Because I hold, on the basis of Prong I of the *Burlington/Carter* Test, that School District 75 did not deny S.C. a FAPE, I do not need to

---

[3] The other students were either 12 or 13 years old, while S.C. was just 11.

[4] The other students were classified as having an emotional disturbance, while S.C. was classified as having a speech and learning impairment.

[5] The other students had reading proficiency between first and sixth grade levels and math proficiency between second and sixth grade levels. S.C. read and did math at the bottom of the range, at first and second grade levels, respectively.

address Prongs II or III: whether the Cooke Center was an appropriate placement and whether equitable considerations support H.C.'s claim.

### A. H.C.'s Objections to I.S. 7 Are Precluded

If an IEP is inadequate, a parent may reject a school district's recommended placement, as the inadequacy of the IEP denies the child a FAPE. Under § 1412(a)(10)(C) of the IDEA, the parent unilaterally may enroll her child and obtain retroactive reimbursement. When a parent chooses this path, however, the complaint generally must be based on defects in the IEP itself rather than from doubts about the specific school's ability to implement the IEP. *See K.L. ex rel. M.L. v. N.Y. City Dep't of Educ.*, 530 F. App'x 81, 87 (2d Cir. Jul. 24, 2013) ("'The appropriate inquiry is into the nature of the program actually offered in the written plan,' not a retrospective assessment of how that plan would have been executed.") (quoting *R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 187 (2d Cir. 2012)); *N.K. v. N.Y. City Dep't of Educ.*, 961 F. Supp. 2d 577, 590 (S.D.N.Y. 2013) ("courts are prohibited from evaluating the adequacy of an unimplemented IEP based on evidence about the particular classroom in which a student would be placed."). Indeed, the "Second Circuit has repeatedly held that there is no requirement that an IEP even identify a specific school site at which an IEP will be implemented." *Id.*; *see also T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009). If the IEP is adequate, complaints about a specific school site chosen by DOE to implement the IEP often have to await an actual enrollment of the child in the recommended school. *See F.L. ex rel. F.L.*, 553 F. App'x 2, 8 (2d Cir. Jan. 8, 2014) (explaining that a challenge to "the DOE's choice of school, rather than the IEP itself" is appropriate only in "a later proceeding to show that the child was denied a free and appropriate education 'because necessary services included in the IEP were not provided in practice.'") (quoting *R.E.*, 694 F.3d at 187).

In this case, H.C. alleges that S.C. could not have received a FAPE at I.S. 7 because of complaints about S.C.'s potential classmates, I.S. 7's provision of therapy services, and the teacher instruction H.C. observed during her site visit. Each of these defects relates to the school's ability to execute the IEP in practice, rather than to the IEP itself. Because S.C. never enrolled in I.S. 7, the alleged defects are not grounds for relief in this case.

## B. The Alleged Defects Do Not Constitute Denial of a FAPE

H.C. urges this Court to follow a minority of district courts in holding that "a parent may challenge the adequacy of a placement classroom, even if the child never enrolled in the school, if the alleged defects were reasonably apparent to either the parent or the school district when the parent rejected the placement." *Scott ex rel. C.S. v. N.Y. City Dep't of Educ.*, 6 F. Supp. 3d 424, 446 (S.D.N.Y. 2014). However, even under that test, H.C. has not shown that S.C. would have been denied a FAPE at I.S. 7.

### *i. Other Students*

Plaintiff argues that grouping S.C., who read at a first grade level and did math at a second grade level, with students whose reading and math abilities ranged from first to sixth grade was inappropriate. But the law does not require that students be grouped with others of identical academic abilities. *See M.P.G. ex rel. J.P. v. N.Y. City Dep't of Educ.*, No. 08-cv-8151, 2010 WL 3398256, at 11 (S.D.N.Y. Aug. 27, 2010) (rejecting challenge to functional grouping where the student was "the lowest-level reader in the class . . . [and] ranked near the bottom in math" and the "closest student in reading level was a full year [ ] ahead of her."). In this case, the IHO considered this disparity but found the grouping suitable. The district court should give due weight to the administrative proceedings and should not "substitute [its] own notions of

sound educational policy for those of the school authorities which [it] review[s]." *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

Plaintiff also argues that the district inappropriately grouped H.C., who was not classified as having emotional disturbance, with students who were. However, the DOE is permitted to group students with different needs unless the grouping detracts from the opportunities of other students. *See* 8 N.Y.C.R.R. § 200.6(a)(3)(iv). In a 2012 case, parents challenged their child's placement based partly on objections to grouping the child with emotionally disturbed students. *See E.A.M. v. N.Y. City Dep't of Educ.*, No. 11-cv-3730, 2012 WL 4571794 (S.D.N.Y. Sep. 29, 2012). The parents argued that "the presence of students with 'serious behavioral issues' would distract the [s]tudent and thus hinder her progress," but, as Chief Judge Preska explained,

> whether a student is properly grouped with other students who have behavioral needs is a question of educational policy, and, in any event, the 'relevant inquiry is . . . not whether the Placement Classroom provided all possible support to ensure that the [s]tudent did not lose focus, but rather whether objective evidence indicated that she was likely to progress, not regress, under the proposed plan.

*Id.* at *11 (quoting *S.F. v. N.Y. City Dep't of Educ.*, No 11-cv-870, 2011 WL 5419847, at *17-18 (S.D.N.Y. Nov. 9, 2011). at *17-18. In this case, like in *E.A.M.*, the IHO found that the IEP was reasonably calculated to confer meaningful educational benefits on S.C., and H.C. has not presented any objective evidence to demonstrate that S.C. would have regressed in the company of emotionally disturbed students. There is no basis for concluding that grouping S.C. with emotionally disturbed students denied him a FAPE.

***ii.*** ***<u>Off-Site Therapy</u>***

In this case, S.C.'s IEP provided for special education transportation, individual physical therapy twice per week, small group speech/language therapy twice per week, small

group occupational therapy twice per week, and group counseling once per week. During her site visit, H.C. was told that the program had a speech/language therapist on staff, and that the occupational and physical therapy would be provided through independent contractors. Tr. at 248.

H.C. argues that I.S. 7 was unable to provide related services contained in the IEP on-site, such as occupational therapy, physical therapy, speech therapy, and counseling. The DOE does not dispute this allegation, but instead challenges its significance. Under New York law, the DOE is expressly permitted to provide related services through independent contractors. *See* N.Y. Educ. Law §§ 1604(30), 1709(33), 2503(3), 2254(15)(a), 4402(2)(b). H.C. asks the Court to disregard that policy in her case, but does not propose a reason for doing so. The IHO found that off-site related services offered via Related Service Authorization ("RSA") vouchers could have provided S.C. with a FAPE, and without "the specialized knowledge and experience [ ] to resolve persistent and difficult questions of educational policy," I decline to second-guess that conclusion. *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009).

***iii. Quality of Instruction***

Finally, Plaintiff argues that the teacher and paraprofessional were themselves incapable of implementing S.C.'s IEP. But even putting aside the obvious problem with exhaustion,[6] there is no evidence to suggest that S.C.'s teacher and paraprofessional would have been unable to implement the IEP as written. Plaintiff claims to have observed the teacher

---

[6] H.C. did not raise this issue in the initial due process complaint, and as a result neither the IHO nor the SRO had an opportunity to address it. As the Second Circuit has explained, "persons claiming to be aggrieved by [ ] violations of the IDEA must first exhaust their administrative remedies." *Garro v. State of Conn.*, 23 F.3d 734, 737 (2d Cir. 1994) (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir. 1987)). Absent a compelling reason to excuse exhaustion, such as likely futility, courts may not consider alleged violations that the plaintiff "did not raise, and the hearing officer did not consider." *Id.*; *See also* B.P. v. N.Y. City Dep't of Educ., 841 F. Supp. 2d 605, 611 (E.D.N.Y. 2012) ("The scope of the inquiry of the IHO, and therefore the SRO and this Court, is limited to matters either raised in the plaintiff's impartial hearing request or agreed to by Defendant."). There is no such excuse offered here.

reading aloud to the entire class together and claims not to have observed the teacher utilizing "hands-on-visuals or [ ] multi-sensory strategies [in] the classroom." Tr. at 230-31. But these limited observations, made during H.C.'s brief site visit after she had already rejected S.C.'s placement at I.S. 7, are clearly insufficient for concluding that S.C. would have been denied a FAPE.

## CONCLUSION

For the foregoing reasons, I hold that the State Review Office did not err in finding that S.C. was offered a FAPE for the 2012-13 school year. Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's motion is denied. The Clerk shall mark the motions (Doc. Nos. 18, 21) terminated, and the case closed.

SO ORDERED.

Dated: New York, New York
April 9, 2015

ALVIN K. HELLERSTEIN
United States District Judge